Thad BROWN, Plaintiff,

v.

David THOMPSON, C. Vinueza, Jack Davis, and Dr. Miller, Defendants.

Civ. A. No. 493–319.

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 17, 1994.

Thad Brown, pro se.

Lester Benjamin Johnson, III, Lester B. Johnson III, P.C., Linzie F. Bogan, Savannah, GA, for David Thompson.

Lester Benjamin Johnson, III, Linzie F. Bogan, Lester B. Johnson III, P.C., William Phillips Tinkler, Jr., Decatur, GA, for remaining defendants.

## *ORDER*

EDENFIELD, Chief Judge.

After a careful *de novo* review of the Magistrate's Report and Recommendation on Defendants' motions for summary judgment, the Court **REJECTS** the Recommendation, to which objections have been filed. For reasons discussed below, both Defendant David Thompson's motion for summary judgment and Defendants Vinueza, Davis, and Miller's ("Medical Defendants") motion for summary judgment are **GRANTED.**

## I. BACKGROUND

Plaintiff Thad Brown brought this § 1983 action against the Defendants claiming a deliberate indifference to his medical needs so egregious as to constitute a violation of the Eighth Amendment. Brown, then an inmate at Coastal Correctional Institute ("CCI"), has various medical problems, including gout, poor vision, glaucoma, cataracts, skin problems, hernias, and slight emphysema. Because of his conditions, Brown often has difficulty breathing and walking. The Court is satisfied that these conditions are "serious" for purposes of constitutional analysis. The Medical Defendants' questionable conduct allegedly amounts to (a) refusal to dispense medication to Brown on one occasion, (b)

refusal to see Brown on one occasion, (c) failure to provide a wheelchair to Brown so that he could travel to the medical section, and (d) failure to bring food to Brown in his cell, even though he again was unable to walk and so otherwise unable to get it. Defendant Thompson, the Warden of CCI, allegedly condoned insensitive and inadequate care by the medical staff as a matter of jail policy, and so participated in the staff's deliberate indifference to Brown's serious medical conditions.

The Court agrees with the factual assessment of the Magistrate, contained in his Report and Recommendation at pp. 1–4, will not repeat it here. The Court reviews particular facts where necessary to explore relevant legal standards.

## II. SUMMARY JUDGMENT

■■■ Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences which may be drawn from it should be viewed in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985). The party seeking summary judgment must first identify grounds which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that there is a genuine issue of material fact. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566 (11th Cir. 1991). *See also United States v. Gilbert*, 920 F.2d 878 (11th Cir.1991). A mere scintilla of evidence, however, will not suffice to support the nonmovant's position. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## III. DEFENDANT THOMPSON

■■■ The Court agrees with the Magistrate's conclusion that Defendant Thompson's motion for summary judgment should be granted. Brown is required to show either that Thompson directly participated in the alleged constitutional deprivation or that there is some other causal connection between Thompson's acts or omissions and the incident in question. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988). A causal connection may be established by showing that Thompson implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the constitutional violation occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986), *reh'g denied*, 808 F.2d 61 (11th Cir.1986). Thompson could also be subject to § 1983 liability if a history of widespread abuse had put him on notice of the need to take corrective action, but he failed to do so. *Brown*, 906 F.2d at 671; *Williams v. Cash*, 836 F.2d 1318, 1320 (11th Cir.1988).

As the Magistrate observes, "the plaintiff has adduced no competent evidence that [Thompson] condoned, or was even aware of, the allegedly poor medical treatment received by the plaintiff." Report, at 7. Brown had ample opportunity to provide the Court with evidence of Thompson's involvement, but did not do so; meanwhile, Thompson has identified those portions of the record that he believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. With nothing more than conclusory allegations of constitutional violations by Defendant Thompson, Brown's claim cannot survive Thompson's motion for summary judgment.

## IV. THE MEDICAL DEFENDANTS

The Court's disagreement with the Magistrate comes on the issue of the Medical Defendants' treatment of Brown. The Magistrate found that the medical staff was not immune from Brown's claims and that a

reading of the record most favorable to Brown could support his claim of deliberate indifference to his medical needs. The Court reviews each issue in turn.

### A. Qualified Immunity

Immunity for state officials is the rule, not the exception. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). Any doubts on this score were recently, firmly laid to rest by the Eleventh Circuit's *en banc* decision in *Lassiter v. Alabama A & M,* 28 F.3d 1146, 1149–1151 (11th Cir.1994). A government official is immune from civil liability when the official is performing a discretionary function and his conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.

*Lassiter,* 28 F.3d at 1149 (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Once the qualified immunity defense has been raised, *Lassiter* further reminds lower courts that they must not permit plaintiffs to discharge their burden of showing that the relevant law was "clearly established" by merely "referring to general rules and to the violation of abstract 'rights.'" 28 F.3d at 1150.[1] The decision quotes with approval another recent Eleventh Circuit opinion:

> When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent

are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. . . . *Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.*

*Id.* (emphasis in original) (quoting *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1573, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993)). For qualified immunity to be lost, pre-existing law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Lassiter,* 28 F.3d at 1151 (emphasis in original).

That said, the Magistrate, after earlier summarizing the general standard for deliberate indifference claims under the Eighth Amendment, states, in total, the following on the issue of whether the law in this case is clearly established for purposes of qualified immunity:

> The clearly established law is that set forth in the discussion above.

Report, at 11. This clearly establishes that the Magistrate did not adequately address the second prong of the qualified immunity inquiry.

Brown's deliberate indifference claim rests on three points. First, he claims that the Medical Defendants deprived him of medical care for his gout and breathing problems on July 14 and 16, 1993. Second, Brown claims that he was denied the use of a wheelchair even though he was unable to walk, and third, that on July 19 Dr. Vinueza ordered delivery of food to Brown's cell stopped even though Brown still lacked mobility, thus depriving him of sustenance that day. The Court is satisfied that the medical personnel were performing discretionary duties[2] within

---

1. The distinction here is actually one that was made in *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738: the difference between *"currently applicable"* law, meaning the standards applicable in appropriate scenarios, and *"clearly established"* law, meaning actual cases establishing that a

particular scenario indeed violates the relevant legal standard.

2. Providing medical care is not discretionary; the staff must do so under relevant rules and regulations. The type and amount of care, how-

the scope of their employment, and so they are immune from Brown's claims unless prior caselaw exists in which prison medical personnel were found liable under § 1983 for actions similar to any of those alleged above. We confine our search to cases decided by the United States Supreme Court, the Eleventh Circuit, or district courts in Georgia. Government personnel are not required to decide whether decisions in other, nonbinding jurisdictions would be adopted in this one.

### 1. Failure to Provide a Wheelchair

■ The Court's efforts have not uncovered any cases in which denial of wheelchair use constituted deliberate indifference to medical needs under the Eighth Amendment. The closest case in this circuit is *Evans v. Dugger*, 908 F.2d 801 (11th Cir.1990), in which a partially paraplegic inmate was provided with a wheelchair instead of his usual crutches, braces, and orthopedic shoes. Neither outdoor recreation nor physical therapy were available to him. The inmate claimed that as a result of these deprivations, he lost the physical ability to walk with braces and crutches and so had become completely dependent on the wheelchair. The district court had found in favor of the defendant prison officials, and the Eleventh Circuit affirmed.

This case is not sufficient factual precedent for the Court to hold that temporary denial of wheelchair use is so clearly established a violation of the Eighth Amendment that every "like-situated, reasonable government agent" would know it. *See Lassiter*, 28 F.3d at 1150. The Medical Defendants are thus immune to a deliberate indifference claim based on failure to provide a wheelchair to inmate Brown.

### 2. Lack of Food and Denial of Medical Attention

Brown claims that Dr. Vinueza stopped delivery of food to Brown's cell after determining that Brown could walk himself to wherever other inmates received their meals. Brown contends that he actually was unable to walk the required distance, and so Vinueza's actions effectively deprived him of food.

ever, is purely discretionary, and it is that discre-

Brown also contends that on July 14 and 16 he was deprived of needed medical care.

■ Denial of food and medical attention are, *prima facie,* clearly established violations of the Eighth Amendment. *See, e.g., Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811, 822 (1994) (noting that Eighth Amendment requires prison officials to provide "adequate food, clothing, shelter and medical care" (citation omitted)); *Waldrop v. Evans,* 871 F.2d 1030 (11th Cir.1989), *reh'g denied,* 880 F.2d 421 (11th Cir.1989) (affirming lower court denial of defendant prison physicians' motion for summary judgment on grounds of qualified immunity, where doctors denied plaintiff medication in connection with psychiatric care); *Ancata v. Prison Health Services,* 769 F.2d 700 (11th Cir.1985) (reversing dismissal of claims against jail medical staff for deliberate indifference to medical needs involving delay in treatment and refusal to allow medical examinations). As such, qualified immunity is not appropriate in this context. Any reasonable prison official is fully aware that deprivation of food and medical care for serious medical conditions is illegal; it would be beyond credibility for prison medical staff to claim ignorance as to the potentially constitutional implications of denying inmates basic necessities of life.

### B. Deliberate Indifference to Serious Medical Needs

■ Denial of food and medical attention are not, however, clearly established violations *per se.* The duration of the deprivations, the context in which they occur, and the intent of the prison officials implicated are all elements affecting a claim of deliberate indifference under the Eighth Amendment. In this case, under a reading most favorable to the Plaintiff, the conduct of the Medical Defendants does not rise to the level required for a constitutional violation. In fact, it does not even come close.

■ Under the Eighth Amendment, prisoners have a right to receive medical treatment for serious illness and injury. *Estelle v. Gamble,* 429 U.S. 97, 103–05, 97 S.Ct.

tion that is at issue here.

285, 290–92, 50 L.Ed.2d 251 (1976). Prison staff who display "deliberate indifference" to the serious medical needs of a prisoner violate the Eighth Amendment and may be held liable under § 1983. *Id.* at 104–05, 97 S.Ct. at 291–92. Knowledge of the need for medical care and the intentional refusal to provide that care can constitute deliberate indifference. *See, e.g., Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989). Delay in treatment of serious and painful injuries may also violate the Constitution. *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990).

■ However, the deliberate indifference proscribed by the Eighth Amendment must be so egregious as to constitute cruel and unusual punishment, *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291–92; *Waldrop,* 871 F.2d at 1033; it must involve "the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney,* ⸺ U.S. ⸺, ⸺, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (citing *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291). Accidents, mistakes, negligence, and medical malpractice "are not constitutional violation[s] merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292; *Harris v. Coweta County,* 21 F.3d 388, 393 (11th Cir.1994). A simple difference in medical opinion also does not amount to a constitutional violation. *Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

The foregoing makes plain that there is a necessarily subjective component to Eighth Amendment analysis; when it is claimed that an official inflicted cruel and unusual punishment, the Court must determine the official's state of mind during the incident. *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). Without evidence of "obduracy and wantonness," *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986), an Eighth Amendment claim cannot succeed.

Turning to the instant case, there is simply no evidence that the medical staff was "deliberately indifferent" to Brown's needs. Beyond conclusory allegations, Brown has pre-sented nothing to show any intent by the Medical Defendants to deliberately obstruct his medical care. If the Court makes several dubious assumptions in Brown's favor, then at worst the staff failed to give him medication on one occasion and refused to see him on another. *See* Magistrate's Report, at 3. If the Court accepts this reading most favorable to Brown, the alleged misconduct does not violate the Eighth Amendment. It may be indicative of impatience or negligence or a difference of medical opinion between medical staff and inmate Brown, but it is certainly not the deliberate indifference to a serious medical condition contemplated by the Cruel and Unusual Punishments Clause. It offends no "contemporary standards of decency." *Helling,* ⸺ U.S. at ⸺, 113 S.Ct. at 2480. The Medical Defendants have shown—and it is not disputed—that between January 15, 1993 and August 2, 1993, Brown received medical attention on approximately twenty occasions, some of which were within one or two days of each other. He was given x-rays, an EKG, a PPD a test, and continuing examinations over an eight month period. He was dispensed Robitussen, Entex LA, INH medication, Lotrimin, Benadryl, Sudafed, a Medril Dose Pouch, uric acid, Colchicine, Indocin, Colbenamide, and even a softer mattress. His conditions were monitored until he left the facility. While it is indeed disputed whether the medical staff failed to give Brown medication on July 14, 1993, or refused to see him at all on July 16, 1993, the disputes are immaterial in light of the solid medical evidence contained in the record. The staff clearly attended to Brown on a constant basis, demonstrating a lack of intent to ignore his medical concerns.

It is true, as Brown argues, that deliberate indifference to serious medical needs can be shown when "prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ancata,* 769 F.2d 700, 704 (11th Cir.1985) (quoting *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). Brown was never prevented from taking recommended medi-

cation, and was not denied access to medical staff in the manner contemplated by the courts in *Ancata* or *Ramos*. In *Ancata*, the inmate was forced to secure a court order before prison officials would allow him a psychiatric or orthopedic exam; in *Ramos*, inmates challenged the entire health care distribution system of a maximum security prison. In the instant case, the inmate was treated for months and then allegedly denied treatment on a single day and denied a wheelchair on another. The former claim, if true, evinces no deliberate indifference—especially since Brown was even then on medication prescribed by the staff—and the latter claim is barred by the Medical Defendants' qualified immunity.

With the medical records at their disposal, the Medical Defendants have more than carried their burden of showing an absence of material issues of fact in light of current Eighth Amendment standards. In response, Brown has nothing except his own affidavit with which "to go beyond the pleadings," and show this Court material issues that, if resolved in his favor at trial, support an Eighth Amendment claim. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

## V. CONCLUSION

Because the conduct in this case, even if considered in a light most favorable to the Plaintiff, does not rise to the level of a constitutional violation, the Report and Recommendation of the Magistrate is **REJECTED,** and both the Defendants' motions for summary judgment are **GRANTED.**

SO ORDERED.