[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11682
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-61843-CMA


ERIC WATKINS,

Plaintiff–Appellant,

versus

BROWARD SHERIFF OFFICE,
SCOTT ISREAL, Sheriff,
NICOLENE JOHNSON,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 26, 2020)

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Eric Watkins appeals the dismissal of his civil rights complaint against Broward County Sheriff's Office (BCSO), Sheriff Scott Israel, and Deputy Nicolene Johnson, arising from his arrest for trespassing.[1]  Finding no error, we affirm.

I.

According to the allegations in Watkins's amended complaint, he was sitting in his car in a privately owned open parking lot when Johnson and two other deputies arrived.  Johnson ordered Watkins out of his car and told him that he was under arrest for trespass after warning.  Johnson said that she had been informed that the property manager had asked Watkins to leave, and that he had refused and "cursed" the manager.  According to Watkins, no manager or owner of the property was present when Johnson arrived, or at any time during or after the arrest.  When Watkins protested that no one had ordered him to leave, Johnson asked, "Don't you see all these no trespass signs posted on the property prohibiting you from being on the property?"  Watkins told Johnson that the posted signs did not qualify as "no trespassing" signs under Florida law because they did not actually say "no trespassing"; instead, they gave notice that Broward County

---

[1] Watkins sued the defendants in their individual and official capacities, thus effectively bringing suit against the entity that the individual defendants represent—here, Broward County—in addition to the named defendants personally.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

2

sheriff's officers were authorized to advise any person to leave the property, and that the failure to leave the premises after being instructed to do so could result in an arrest for trespass after warning.  Johnson arrested Watkins and took him to jail.

Watkins filed a complaint pursuant to 42 U.S.C. § 1983, alleging that Johnson lacked probable cause to arrest him for trespass under Florida law because he had not been given the required warning to leave the property.  He alleged that the BCSO and Sheriff Israel were liable for the unconstitutional arrest because they had a policy of training officers to rely on signs like those in the parking lot where he was arrested—which Watkins called "Broward County trespass program" signs—to provide trespass warning justifying arrest, even though the signs did not contain the "no trespassing" language required by statute.  *See* Fla. Stat. § 810.011 (2014) (defining the term "posted land").  He sought money damages for his emotional distress and financial loss resulting from the arrest.

The district court found that Johnson was entitled to qualified immunity for the arrest because she reasonably believed, even if mistakenly, that Watkins had committed the crime of trespass after warning.  The district court also found that Watkins's claims against the BCSO and Sheriff Israel were predicated on his claims against Johnson; accordingly, it dismissed Watkins's complaint in its entirety.  Watkins now appeals.

II.

We review the district court's dismissal on qualified immunity grounds de novo, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To receive qualified immunity, a defendant must first prove that she was acting within the scope of her discretionary authority when the relevant conduct took place. *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019). Here, the parties do not dispute that Johnson was acting within the scope of her discretionary authority as a Broward County sheriff's deputy when she arrested Watkins.

Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id*. In evaluating whether a plaintiff has met this burden, we examine: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right, and

4

(2) whether the right in question was clearly established at the time of the alleged violation.  *Id.*  Watkins's claims fail at the first prong of this test.

### III.

Watkins argues that Johnson was not entitled to qualified immunity because she lacked even arguable probable cause to believe that he was trespassing.  He further contends that the district court erred in dismissing his claims against the BCSO and Sheriff Israel because those claims were independent of his claims against Johnson.[2]  We address each argument in turn.

### A.

The Fourth Amendment prohibits "unreasonable searches and seizures."  An arrest is a "seizure" of the person and therefore must be reasonable under the circumstances.  *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018).  "In order to make an arrest without a warrant, a police officer must have probable cause to believe that the suspect committed a crime."  *Huebner*, 935 F.3d at 1187.  Probable cause to arrest exists "when the facts and circumstances within the

---

[2] For the first time, Watkins also argues that the arrest was unlawful because Johnson did not witness the property manager telling him to leave, and both the Fourth Amendment and Florida law prohibit arrest for a misdemeanor unless the crime takes place in the officer's presence.  We need not address this argument because Watkins failed to raise it in the district court.  *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012).  We note, however, that because the Florida crime of trespass is committed by entering *or remaining on* private property *after* being told to leave, if Johnson reasonably believed that the property manager told Watkins to leave before she arrived, then she had reason to believe that he was trespassing—in her presence—when she arrived and observed him in the parking lot.  Fla. Stat. § 810.09(1)(a) (2014).

officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (citation and quotation marks omitted).  Probable cause "is not a high bar" and requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Paez*, 915 F.3d at 1286 (citation omitted).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

An officer is entitled to qualified immunity for an arrest where she had even "arguable probable cause"; that is, where a reasonable officer in the same circumstances and possessing the same knowledge as she possessed could have believed that probable cause existed.  *Wilkerson*, 736 F.3d at 977–78.  Arguable probable cause does not require proof of every element of a crime.  *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).

A person commits the Florida misdemeanor offense of trespass on property other than a structure or conveyance when, "without being authorized, licensed, or invited," he "willfully enters upon or remains in any property other than a structure or conveyance: (1) As as to which which notice against entering or remaining is

6

given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011." Fla. Stat. § 810.09(1)(a), (2)(a) (2014).

We readily conclude that on the facts alleged, Johnson had probable cause to believe that Watkins was actively committing the offense of trespass on property other than a structure or conveyance when she arrested him, regardless of whether the signs that she viewed as "no trespassing" signs actually met the statutory notice requirements. She had been informed that the property manager had complained to the police that Watkins refused to leave the property after being asked to do so, and she knew that he remained on the property when she arrived.

Watkins argues that Johnson could not have reasonably believed that the property manager had told him to leave, because he informed her that no one had ordered him to leave and there was no sign of the "m[y]sterious manager" when she arrived. Generally, however, police officers are "entitled to rely on a victim's criminal complaint as support for probable cause." *Myers v. Bowman*, 713 F.3d 1319, 1326–27 (11th Cir. 2013). And the fact that Watkins and the property manager provided conflicting accounts did not make Johnson's belief that Watkins was trespassing objectively unreasonable. A law enforcement officer is under no obligation to believe a suspect's story and forgo an arrest when the information she initially received provided probable cause to believe that the suspect had

7

committed or was committing a crime. *Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990).

### B.

Turning to Watkins's claims against the BCSO and Sheriff Israel, a municipal actor may be held liable under § 1983 only if it causes the alleged constitutional violation through the implementation of an official policy or an unofficial but pervasive and well-settled custom or practice. *See City of Canton v. Harris*, 489 U.S. 378, 385, 388–89 (1989); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). Similarly, to state a claim for supervisory liability under § 1983, a plaintiff must allege facts showing that the supervisor was either personally involved in the alleged constitutional violation, or that the supervisor's actions caused the violation—for example, where "a history of widespread abuse" gave the supervisor notice of the need to correct the behavior of her subordinates and she failed to do so. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.*

A municipality may be held liable for the failure to provide adequate training to its police officers if the deficiency evidences a deliberate indifference to the rights of its citizens. *City of Canton*, 489 U.S. at 388. To proceed under a

8

failure-to-train theory, a plaintiff ordinarily must show a "pattern of similar constitutional violations by untrained employees" because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As explained above, Watkins failed to allege facts sufficient to demonstrate that Johnson violated his Fourth Amendment rights when she arrested him for trespassing. And because Watkins failed to make a plausible claim that Johnson had violated his constitutional rights, he cannot show that a policy or custom of the BCSO caused a constitutional violation. Nor can he show a "pattern of similar constitutional violations by untrained employees" or "a history of widespread abuse" based on his allegation that the BCSO and Sheriff Israel failed to train county deputies that the "Broward County trespass program" signs did not provide the warning required by statute for trespass on posted property. *Id.*; *Brown*, 906 F.2d at 671. Accordingly, Watkins's claims against the BCSO and Sheriff Israel necessarily also fail.

IV.

The district court did not err in dismissing Watkins's claim against Johnson because, based on the information available to her, Johnson reasonably believed that he was committing the Florida misdemeanor crime of trespass on property

9

other than a structure or conveyance.  And because the facts alleged in Watkins's amended complaint did not state a plausible claim that Johnson had violated his Fourth Amendment rights by arresting him for trespassing, Watkins also failed to plausibly allege that any custom or policy of the BCSO or Sheriff Israel caused such a violation.  We therefore affirm the district court's dismissal of Watkins's § 1983 complaint.

**AFFIRMED.**